CHARLES L. PRINDLE, JUDGE OF PROBATE, *vs.* HARVEY HOL-
COMB AND ANOTHER.

By statute, (Gen. Statutes, tit. 19, chap. 1, sec 13,) no action is to be brought
upon a probate bond without the consent of the probate court, given upon the
written application of some party interested. Held that, where a suit was
brought without such consent, the matter could be taken advantage of only by
a plea in abatement.

The defendants were co-sureties of a testamentary trustee who converted the
trust money to his own use and died insolvent, both sureties being able to
respond. One of the defendants was appointed trustee, and gave bond, with
the other as surety, to well and truly execute the trust. The new trustee pre-
sented a claim for the trust money against the estate of the former trustee and
received a small dividend thereon. Held that, as both defendants were liable
as sureties for the balance of the trust money, the defendant who was trustee
was to be regarded as having received the money, and that both defendants
were therefore liable on the new bond for his neglect to make certain payments
of interest from the trust fund, as required by the trust.

Where a bond is given to execute a trust according to law, it is a breach of the
bond not to render the annual account required by statute, even though the
probate court has made no order for such an account.

And it does not alter the case that the statute makes it the duty of the courts of
probate to require all trustees to render an annual account.

And in all cases where an order is necessary it is one of the duties of the trustee
to apply for such an order.

The annual account rendered by a trustee and approved by the court does not
conclude the parties.

And it *seems* that the court of probate has no power to settle the final account
of a trustee and to determine conclusively the rights of the trustee and parties
interested.

The trust was under a will which directed the trustee to pay over the annual
interest of the trust fund to *D.* Held that this duty was complete without an
order requiring its payment.

The Superior Court can entertain a suit on such a bond, and can ascertain the
damages for a breach of it without a settlement of the trustee's account in the
court of probate.

The case of trustees is different in this respect from that of executors and
administrators. The latter have to do with the settlement of estates, of which
the probate courts have sole jurisdiction; while those courts have not sole
jurisdiction of testamentary trusts.

In a suit on a trustee's bond, it was held that there could be no recovery for
moneys which the trustee was to pay between the time of bringing the suit
and the time of trial, as the suit did not involve a final settlement of all
matters between the parties.

DEBT, on a probate bond; brought to the Superior Court in

Litchfield County. The bond, which was in the penal sum of three thousand dollars, was given by the defendant Holcomb, as trustee under the will of Sally Deming; the other defendant, Abraham Herman, being surety. The condition of the bond was as follows:

" The condition of this obligation is such, that if the above bounden Harvey Holçomb, who is appointed and has accepted the trust of trustee under the last will and testament of Sally Deming, late of Canaan, deceased, shall well and truly execute said trust according to law, the provisions of said will, and the orders of court then this obligation is to be void, but on default thereof, to remain and abide in full force, power and virtue."

The provisions of the will creating the trust were as follows:

"I give and bequeath and devise to my brother Charles D. Deming, the use and improvement, during his natural life, of all the real estate I may own at my decease, and of all my household furniture, clothing, stock on the farm and farming tools.      *      *      And in regard to all other personal property belonging to me at my decease, whether in moneys, notes, bonds, mortgage or otherwise, I hereby direct that the same shall be held by my executor in trust, during the natural life of the said Charles, and I hereby direct my said executor to collect and dispose of the same at his discretion, and all the avails thereof to loan upon mortgage, or other sufficient security, and to pay over annually the interest and annual avails thereof to the said Charles during his natural life, for his own sole use."

A committee, to whom the case was referred, made the following finding of facts, (omitting the part relating to the bond and will:)

Subject to objections to the testimony, which objections are fully stated in a subsequent part of my report, I find that at her death Sally Deming left personal estate (other than clothing, household furniture, farming tools and stock on her farm,) of the value of $2,522.48, which became and was the trust fund, the interest and avails of which were annually to

be paid to Charles D. Deming as provided in the will. Mr. Higley, the trustee named in the will, accepted the trust and administered it until 1859, when he resigned and Edward P. Hunt was appointed trustee. Mr. Hunt resigned in 1868, and John H. Scott was on the 18th of June, 1868, appointed trustee, and with the defendants, Herman and Holcomb, as sureties, gave bond for the faithful discharge of the trust. Mr. Scott died April 30, 1871, badly insolvent. During his life he converted the trust fund to his own use, and at his death was indebted to the fund in the sum of $1,921.23, that amount being then the entire remaining principal of the fund. The trusteeship remained vacant until November 6th, 1871, when the defendant Holcomb was appointed trustee, and with the defendant Herman gave the bond now in suit. Hunt, at the time of his resignation, June 18th, 1868, settled his account as trustee with the court of probate, the principal of the fund then in his hands being $2,448.46. Since that time there has been no settlement of the trust account before the court, and no citation was issued by the court calling upon Mr. Scott, or upon the defendant Holcomb, to render an account. The defendant Holcomb, as the successor of Mr. Scott in the trusteeship, presented a claim against his estate for the amount of $1,921.23, and received by way of dividend $134.48, and has not otherwise received any of the trust fund; but Mr. Herman, the co-surety with Mr. Holcomb upon Mr. Scott's probate bond, is and always has been able to respond to the obligation which the bond imposes on him. Mr. Holcomb is also able thus to respond, but the bond has never been enforced, and since the death of Mr. Scott nothing has been paid to Charles D. Deming, as interest, or income, or as part of the fund.

Upon these facts, as between Charles D. Deming and the defendant Holcomb, Holcomb is, in my opinion, justly charge-able with interest at the rate of six per centum per annum on the sum of $1,921.23, from the time of the death of Mr. Scott, April 30th, 1871; that is, is justly chargeable with the sum of $115.27, payable April 30th, 1872, of $115.27, payable April 30th, 1873, and of $115.27, payable April 30th,

1874; and is also justly chargeable with interest on these several sums from the time they became payable as above down to the time judgment may be rendered in the case; and the defendant Herman is as surety jointly liable with Holcomb as above.

I therefore find the issue for the plaintiff, and that he as judge of probate recover of the defendants, for the use and benefit of said Charles D. Deming, the sum of $345.81, with interest from the times the several sums making this amount fell due.

The counsel for the defendants excepted to the admissibility of the evidence offered to prove the facts which I have as as above found, and the testimony was by me received, subject to the exception to be acted upon by the court. The objections and exceptions taken by the counsel for the defendants were,

1st.   That the allegations in the plaintiff's declaration are not such as to warrant the introduction of proof in support of the several facts by me found.

2d.   That it being admitted (as it was) that the defendant Holcomb was never cited to render an account as trustee by the court of probate, he cannot be made liable in this suit in the manner found.

3d.   That the court of probate has sole and exclusive jurisdiction to settle Mr. Holcomb's trustee account, and that until found in default by that court he cannot be sued on his bond and made accountable in the manner I have found him to be.

4th.   That it was not shown, (as it was not,) that this action was brought with the consent of the court of probate given upon written application of some party interested.

In the foregoing report, I have made no finding in respect of charges falling due since the date of the plaintiff's writ, August 10th, 1874, but subject to the defendants' objection the parties were heard in respect to such subsequent charges, and if, in the opinion of the court, the evidence is admissible, I find that Holcomb as principal and Herman as his surety are justly chargeable in the further sum of $115.27, payable April 30th, 1875, and $115.27, payable April 30th, 1876, with

interest from the time said sums became payable, which sums are unpaid and remain due to said Charles D. Deming.

The report of the committee was accepted, and the case reserved for the advice of this court.

*D. J. Warner* and *D. T. Warner*, for the plaintiff.

1. Holcomb was appointed trustee in November, 1871. By his acceptance of the trust and presentation of his claim as trustee for the amount of the trust fund remaining, ($1,921.23,) against the estate of Scott, and receiving the dividend thereon, he acknowledged his obligation to make the trust fund good by reason of his being co-surety with Herman on Scott's bond. He is presumed to have made the trust fund good out of his own estate and that of his co-surety; and his duty as trustee under the will was to secure the trust fund by mortgage or other sufficient security. The amount of the fund is therefore to be considered as so much money in his hands. *Davenport* v. *Richards*, 16 Conn., 316.

2. It was not necessary that Holcomb should be cited before a court of probate to render an account of his trusteeship. It was his own default and neglect that he did not render his account, and he cannot take advantage of his neglect and wrong. It was a breach of his bond that he did not return an inventory and render his account. *Warren* v. *Powers*, 5 Conn., 382; *Rowland* v. *Isaacs*, 15 id., 122; *Davenport* v. *Richards*, 16 id., 320; *Moore* v. *Holmes*, 32 id., 561.

3. The court of probate has not sole and exclusive jurisdiction in this case, and it was not necessary that Holcomb should be found in default by that court before he could be sued on his bond. *Moore* v. *Holmes*, 32 Conn., 560. This bond was given for the protection of the *cestui que trust*. Its condition was that the trustee should safely invest the trust fund in mortgage or other sufficient securities, and annually pay over to the *cestui que trust* the interest. What necessity of having an order from a court of probate directing him to pay it? The trustee knows the amount of the fund and the interest that accrues upon it, and the direction of the will is that it shall be paid to the *cestui que trust*. The judge of

probate, knowing that the trustee has not performed his duty in these respects, brings his suit on the bond for the benefit of the *cestui que trust*. This action is the peculiarly appropriate remedy whereby the *cestui que trust* can obtain his rights. *Adams* v. *Spaulding*, 12 Conn., 357; *Davenport* v. *Olmstead*, 43 id., 67. In case of a guardian, a suit may be brought on his bond in the Superior Court without any settlement of his account before the court of probate. *Davenport* v. *Olmstead*, supra. A like rule prevails in testamentary trusts. *Moore* v. *Holmes*, 32 Conn., 576. An action of debt on a probate bond is a proper remedy for a breach of the bond, and the amount to be recovered is to be determined by the proof. *Clarke* v. *Mix*, 15 Conn., 173.

4. The statute requiring the consent of the court of probate before bringing a suit on a probate bond did not go into effect until after this suit was brought. If it did, the objection could not be taken so late, but must have been by plea in abatement.

5. The plaintiff claims that he is entitled to recover not only the interest due on the trust fund down to the date of the writ, but also what may be due at the time judgment shall be rendered in the case. The action is upon the bond, and at common law the whole penalty of the bond is the rule of damages, and the defendant would be compelled to go into a court of chancery to get a reduction. But by statute the courts shall find and assess such damages as are justly and equitably due. Gen. Statutes, p. 444, sec. 1; *Rowland* v. *Isaacs*, 15 Conn., 122; 1 Swift Dig., 678. In actions of account it is settled that the account may be taken up to the time of making the award, and this upon the principle of doing justice to the parties. *Smith* v. *Brush*, 11 Conn., 359; *Holabird* v. *Burr*, 17 id., 556; *Day* v. *Lockwood*, 24 id., 194–5.

*C. B. Andrews* and *L. P. Dean*, for the defendants.

1. The account of a testamentary trustee cannot be settled in a court of law; and surely not in an action brought on a bond. All matters of trust, and especially testamentary trusts, are within the exclusive jurisdiction of the court of

probate; and more particularly is this true of the stating of trustee's accounts. Gen. Statutes, p. 367, secs. 2 to 6. If the probate court does not have exclusive jurisdiction over these matters, then they fall within the jurisdiction of a court of chancery. *Donalds* v. *Plumb*, 8 Conn., 455; *Parsons* v. *Lyman*, 32 id., 566. A court of law can never have jurisdiction to state the account of a testamentary trustee.

2. The defendants cannot be made liable on this bond until Holcomb has been found in default by the probate court. The very terms of the condition upon which the bond is to be held good are that Holcomb shall perform his duty as trustee under the will of Sally Deming "according to law, the provisions of said will, *and the order of court.*" It is admitted that he has never been cited into the court of probate. Clearly then he has never failed to perform any order of that court. A suit on a probate bond is the remedy to recover damage for some official misconduct of the party giving the bond. This official misconduct must be established by the probate records themselves. The rule in all analogous cases shows that it cannot be proved *aliunde*. *Bacon* v. *Fairman*, 6 Conn., 128; *Edmond* v. *Canfield*, 8 id., 87; *Bailey* v. *Strong*, id., 281; *Beach* v. *Norton*, 9 id., 196, 198; *Atwater* v. *Barnes*, 21 id., 242. This rule ought to apply with all rigor to a suit on this bond, where the sole ground of liability is the disobedience to some order of court. *Davenport* v. *Olmstead*, 43 Conn., 67.

3. The plaintiff's whole case must fail because it was not brought "with the consent of the court of probate, given upon the request of some party interested," as required by the statute. The language of the statute is, "No action shall be *brought* upon a probate bond, unless, etc." Gen. Statutes, p. 400, sec. 13. This is an express inhibition that can not be waived.

CARPENTER, J. This is an action on a probate bond conditioned that the defendant Holcomb, as a testamentary trustee, should faithfully discharge the duties of the trust, alleging a breach, &c. The facts were found by a committee, and the

question as to what judgment shall be rendered upon the facts was reserved for the advice of this court.

1. The defendants object that the plaintiff cannot recover for the reason that the action was brought without first obtaining the consent of the court of probate, given upon the written application of the party interested. This is required by statute, Revision of 1875, p. 400, sec. 13. By the margin it would seem that it was enacted by the legislature in 1874, but we are unable to find any such statute in the session laws of that year. As it does not previously appear we infer that it was inserted in the revision by the revisors, and became law only by force of the act adopting the revision. We think it is quite clear that it could have no force prior to January 1st, 1875, when the revised statutes took effect. This suit was brought in August, 1874, and was well brought as the law then stood.

But if it be conceded that the law was then in force, we think it cannot be taken advantage of at this stage of the cause. It should have been pleaded in abatement. Not so pleading it, but taking the chances of a favorable result of a trial upon the merits, the defendants waived the objection.

2. An objection is made to the admission of evidence on the ground of a variance. The bond described in the declaration was given by the defendants conditioned that the defendant Holcomb, trustee under the last will and testament of Sally Deming, should well and truly execute said trust according to law, &c. Under this declaration the committee received proof that the defendants, in the year 1868, executed a bond to the judge of probate, as sureties of John H. Scott, trustee under said will, that said Scott converted the trust fund to his own use, that he died April 30th, 1871, insolvent, that the amount of the trust fund was then $1,921.23, that he defendant Holcomb was subsequently appointed trustee and presented a claim against the estate of said Scott for the amount of said trust fund and received thereon a dividend amounting to $134.48, that he did not otherwise receive any of the trust fund, and that the defendants are abundantly able to respond to the obligation imposed upon them by said bond.

We think this evidence was admissible for the purpose of proving a breach of the bond in suit. It established the fact that Holcomb as trustee had a claim against himself as an individual and the defendant Herman, and that both himself and Herman were able to pay it. That it was his duty to collect the same cannot be questioned. It was not necessary that he should sue himself and his co-surety and obtain judgment, nor was it necessary for him formally to set apart the money or other property as the trust fund. If he did nothing of the kind he in effect assumed the liability and charged himself with the annual interest. There was so much money due on Scott's bond, and nothing more could be collected of his estate. The balance was collectible of the sureties, and a reasonable time for payment had elapsed. As one of the sureties had been appointed trustee and had accepted the trust the money was payable from him as an individual to himself as trustee. Under these circumstances it will be considered and treated exactly as if the money was in Holcomb's hands as trustee, and the law will charge him with the interest accordingly. *Davenport* v. *Richards*, 16 Conn., 310, is a case directly in point.

3. It is next objected that the defendant Holcomb has never been cited to render an account to the court of probate, that he has disobeyed no order of that court, and that the probate records do not show any official misconduct; therefore it is claimed that the defendants cannot be made liable in this action.

If the plaintiff relied upon the defendants' failure to comply with some order or decree of the court of probate as the breach of the bond for which he claims to recover, there might be some force in this claim. But that is not the ground of the action. It will be noticed that the condition of the bond is that the trustee "shall well and truly execute said trust according to law, the provisions of said will, and orders of court."

The law requires him to render to the court of probate an annual account. This he has not done. It is no excuse that the court has not directed him to do it. No order of the

court requiring him to perform this duty is necessary. The statute itself is a standing order. It is true the language of the act as it now stands is that "courts of probate shall require all guardians, &c., to render an account;" but that is to be interpreted, not as making the duty of the trustee contingent upon a prior order of court, but as requiring the court of probate to enforce this duty by removal if need be. This is obvious from the fact that in all cases where the estate is more than five hundred dollars the duty is imperative to render an annual account; when it is less an account is to be rendered only when required by the court of probate. It is further apparent from the language of the act as originally passed in 1853, which is that all guardians, trustees, and conservators "shall annually render their respective accounts, &c."

The will of Sally Deming requires the trustee to pay over annually to Charles D. Deming the interest and avails of the trust estate. This he did not do, and this is the principal breach assigned. This duty is imposed by the will. An order from the court of probate directing performance will not strengthen the duty and is unnecessary. Withholding an order or even prohibiting performance will not release the obligation. Moreover, where prior orders are necessary, as in cases of distribution, there it is the duty of the executor, administrator or trustee, as the case may be, to procure such order. His failure to do so is itself a breach, and will not excuse any further neglect of duty. This objection to the plaintiff's recovery therefore ought not to prevail.

4. The next and last objection is, that the court of probate has sole and exclusive jurisdiction to settle the trustee's account, and that until found in default by that court he cannot be made accountable in an action on his bond.

This objection assumes that the object of the suit is to compel the trustee to state his account. The defendants' counsel in their brief state it thus: "Upon the trial of this case the plaintiff sought, not to make the defendants liable for any ascertained default, but to state the trustee's account." This is not an accurate and full statement of the object of

this suit. It is true the omission of the trustee to render an account of his doings with the trust estate, is alleged, inferentially at least, as a breach of the bond; but there is a more important breach directly and explicitly alleged, and that is, his neglect to pay over to Charles D. Deming the interest and avails of the trust property. To compel such payment we regard as the object of the suit. In order to recover the plaintiff must prove the bond, the breach, and the damage. The damage is proved by showing the amount of the trust fund—it being the same as money in this case—and the law charges him with the interest. Strictly speaking it is no part of the plaintiff's case to show the state of the trustee's account. If the trustee desires to reduce the damages, it is incumbent on him to show his disbursements and the value of his services. If, as he now claims, he cannot do it in this action, it is his misfortune. He, and not the plaintiff, should suffer. Had he done his duty and rendered his account the probate records would have shown the true state of his account. He cannot now take advantage of his neglect to do so and set it up as a defense to this action.

But we regard the matter of stating an account as a mere incident, and that it is competent to state it in this action, so far at least as may be necessary to ascertain the just amount of damages. The cause is unquestionably within the jurisdiction of the Superior Court. That there has been a breach of the bond cannot now be denied. It would be almost an absurdity to hold that the court cannot lawfully determine the amount of damages. There may be cases in which some finding or decree of the court of probate will measure the damages to be recovered in the Superior Court in an action on the probate bond. But in such cases generally, if not always, it will be found that the probate decree is essential to establish the liability, as well as the damages, without which there is no breach; as where an executor or administrator refuses to pay over a distributory share of an estate, or, in the case of insolvent estates, to pay the amount due creditors.

In this case the liability is susceptible of proof without an order of court. The liability being fixed the question of

damages alone remains. The court before which the action is pending must necessarily have the power to determine that question unless there is something in the nature of the case or in the provisions of the statute which confers jurisdiction of that question upon some other tribunal.

There is no inherent difficulty in determining it before the, Superior Court, and no special reason why it should be done by the court of probate. The argument of the defendants assumes that testamentary trustees stand upon the same footing with executors and administrators. Executors and administrators are charged with the duty of settling estates, over which courts of probate have sole and exclusive jurisdiction. It is important that the probate records should show all the proceedings relating to such settlements; hence the propriety and necessity of requiring administrators' accounts to be settled in that court. But with testamentary trustees it is different. Ordinarily they take the trust property after the estate is settled and distribution or a partial distribution is made, and hold it for the purposes of the trust. These trusts are created by will, and the relations existing between the trustee and the cestui que trust are not essentially different from those existing in cases of ordinary common law trusts. Over such trusts courts of probate will exercise no jurisdiction except as it is conferred by statute. Cases of testamentary trusts probably were not frequent prior to 1822, as we find no reference to them in the statutes before that year. Such as may have existed were doubtless regulated and controlled by the General Assembly, or by courts of equity after equity powers were conferred upon the courts in 1778. In 1822 a statute was passed providing that, in case of the death or incapacity of a trustee appointed by will, or of his refusal to accept, the court of probate " shall appoint some suitable person or persons to execute said trust according to the will, taking from them good and sufficient bonds with surety conditioned for a faithful performance thereof." Thus the law stood until 1831, when courts of probate were authorized to remove trustees for cause; and in 1832 an act was passed regulating proceedings upon the resignation of trustees and

providing for the appointment of others in their stead. The next change made was in 1853, when the act was passed requiring trustees, conservators and guardians to render annual accounts to the court of probate.

Under the statutes in force prior to 1853 it will hardly be claimed that a settlement of the trustee's account in the court of probate was essential to the maintenance of an action on his bond. No such settlement was provided for by statute, and probate courts had no such power unless it existed previous to the statutes. That it did not previously exist is apparent when we consider that it is essentially an exercise of chancery powers and glance at the history of courts and equity and probate jurisdiction in this state. The "General Court" had sole jurisdiction of equity causes until 1778, when jurisdiction was conferred upon the county courts in all matters not exceeding £200, and upon the Superior Court in all matters exceeding £200 and not exceeding £800, reserving to the General Court jurisdiction in all matters above the latter sum. Courts of probate, as separate tribunals, were first constituted in the year 1698. In the early history of the colony the ordinary courts of justice—the "Particular Court" or "Court of Magistrates," as it was sometimes called, entertained jurisdiction of "Wills and Inventories." In 1666 counties were organized and probate jurisdiction was conferred upon the county courts. *Col. Records*, Vol. 2, pages 34–39. In 1698 the judge of the county court, with two justices of the quorum, were constituted a "court for the probate of wills, granting administration, and appointing and allowing of guardians, with full power to act in all matters proper for a prerogative court." *Col. Records*, Vol. 4, page 268. In 1699 (same volume, p. 307,) courts of probate were authorized to call administrators to account "for and touching the goods and estate of such deceased person." In 1784 that provision was extended to executors, and has remained a part of the statute laws of this state until this day. Revision of 1875, p. 393, sec. 32.

As thus constituted courts of probate were courts of special and limited powers, and had such jurisdiction only as was

expressly conferred by statute. If an express statute was required to authorize them to call executors and administrators to account, it will not be presumed that they had powers to call testamentary trustees to account in the absence of any such statute. If equity jurisdiction was so sparingly conferred, and to a limited extent only, upon the higher courts, it affords strong reasons for presuming that courts of probate did not exercise such jurisdiction without express authority.

It follows that the court of probate had not jurisdiction of the settlement of Holcomb's account as trustee unless such jurisdiction was conferred by the act of 1853. That act requires all guardians, trustees and conservators annually to render an account for the year next preceding, embracing therein an inventory or schedule of the estate held by them, the estimated value of the same, the amount of income, interest, issues and profits thereof during the year, and the amount paid or proposed to be paid for the support of, or as dividends to, or for the person or persons for whose benefit the estate is held. Such accounts are to be sworn to, and a neglect or refusal to render the same is to be deemed a refusal to perform the duties of the trust.

It will be noticed that the language of this act refers to an annual account to be made to the court of probate, and not to a final settlement with the person or persons ultimately entitled to the trust fund or the income therefrom. There is no provision for notice to other parties interested, none for enforcing any order or decree, and indeed none for compelling any account to be rendered. It is apparent therefore from what the act says and from what it omits to say, that the legislature did not contemplate by the account required a final and conclusive determination of the rights of the parties.

Suppose the trustee had rendered his account and had omitted from the inventory or schedule some item of the trust property, or had neglected to charge himself with some portion of the income received; the acceptance of his account by the court would be no defense to an action on his bond to recover the value of the property so omitted. That was held in the case of an executor even after there had been a final

settlement of his administration account.   *Moore* v. *Holmes,*
32 Conn., 553. · Suppose he had credited himself with a sum
of money paid to the person entitled to the income which in
fact was never paid.   For the same reason and upon the same
principle he would still be liable therefor on his bond.   Sup-
pose further that he should refuse to render any account;
what power has the court of probate except to declare the
trusteeship vacant and appoint another in his place?   In that
event what remedy has the cestui que trust, if the theory of
the defendants is correct, that his account can only be settled
in the court of probate?

These reasons seem to us sufficient to justify the conclusion
that the accounts required by the act of 1853 do not conclude
the parties, and that there is little or no room for inferring
that the court of probate has power to settle the final accounts,
and determine conclusively the rights of trustees and parties
interested in the trust estate.   The Circuit Court of the
United States, in this district, took the same view of the
statute under consideration.   *Parsons* v. *Lyman,* 32 Conn.,
566.

It is competent therefore for the Superior Court to deter-
mine the question of damages in this action.

We see no reason for sanctioning the claim of the plaintiff
that he is entitled to recover the interest accruing since the
commencement of this suit, as this is not a final settlement
of all matters between the parties.

We advise the Superior Court to render judgment for the
plaintiff for the amount of interest due at the time this suit
was commenced.

In this opinion the other judges concurred.